Mr. Rosenberg, let me make sure that you can hear and see us all right. Can you? Your Honors, I can see you and I can hear you. Are you able to hear me? Yes, loud and clear. Where are you? I happen to be in Lisbon, Portugal, and I would actually rather be in New York. I'll be honest with you. Well, if you can make it here, you'll make it anywhere. All right. But anyway, the technology is working, which we've gotten quite good at, so there's no surprise there. So, Mr. Rosenberg, you are leading off. You've reserved three minutes for rebuttal, so that gives you seven minutes to start. The floor is yours. Thank you, Your Honors.                 May it please the Court, Jonathan Rosenberg for the Plaintiff Appellant, Ronald Barker. By way of brief background, Mr. Barker sued Aramark for racial discrimination and constructive discharge under Title VII, as you know. On summary judgment, the District Court dismissed Mr. Barker's last standing claim for constructive discharge. Now, as Your Honors know, to prove a claim of constructive discharge in this kind of case, the Plaintiff has to show these two elements, in this case, intentional racial discrimination, the motive element, and two, that such intentional racial discrimination was intolerable to work under. We're focusing on the first here. Now, the District Court, in this case, dismissed Mr. Barker's constructive discharge claim, not because the evidence of racial discriminatory conduct was irrelevant or insufficient. I'm referring to the stops being removed and provided to the white employee. It found insufficient as to the statements on their own, distinctly, by the way. The District Court, in this case, dismissed the constructive discharge, citing the most important case, in this case, Amtrak v. Morgan, racially discriminatory conduct evidence could not be used to support or prove his constructive discharge claim, and why not? There were two reasons the District Court found, in my reading, and this is my reading of the opinion, because one, that evidence was too much like his employment discrimination claim, right? And two, that it was background evidence under Morgan, and that's it. Background evidence of something unrelated to the element to prove constructive discharge. We know the clearholding in Amtrak v. Morgan that an employee may use time-barred, and I quote, prior access background evidence in support of a timely claim, page 113, the holding, I would say, Justice Thomas's opinion, Amtrak v. Morgan, and we know the holding meant it could use the time-barred evidence, not the claim. You can't use the time-barred claim. Those are gone. The employment discrimination claim, we agree and concede, that's gone, it's time-barred. But Mr. Barker can use prior acts evidence in support of a timely claim. We know from that case because the person who sued had time-barred claims, and the court said claim is not the evidence related that you would need to prove the timely claim. Wasn't this time-barred evidence, I mean the decision doesn't explicitly say that the time-barred evidence about the stop reassignment was being considered as background. The briefing suggests that there was some barred consideration of it, and as you're saying right now, correctly, that yes, that can't be the basis, you can't make a claim based on the time-barred evidence, but it can be considered as background, and didn't the court explicitly state that it was being considered? That's the part of your argument that I don't quite follow, that it wasn't considered. It said it could be considered for purposes unrelated to the element to prove constructive discharge, which is the issue. So you're right, Your Honor, in only the fact that the judge did part of the holding. Prior access background evidence stopped there. Well, let me just quote him, this is at page 14 of the special appendix, quote, even adding in as background evidence the stress and depression that Barker experienced following the stop reassignments and decreased pay, Barker can't meet the high bar for establishing a constructive discharge claim. That suggests that the court considered all the things you're saying he didn't. We know it didn't, because, and I understand, if you look at that quote, I understand what Your Honor is saying. This is Judge Chen, sorry. And I understand what Your Honor is saying, but the time-barred, the court said, Mr. Barker's, and I quote, time-barred employment discrimination claim cannot be resurrected through the vehicle of a constructive discharge claim. Right, that's true, it can't. Right. That's true as a matter of law. The reason that the lower court made that statement was because it found it was too similar to racial discrimination. It said, well, we get a sweep under the rug, the racial discrimination issue, because the initial claim is time-barred, where the evidence related to the time-barred claim goes to the proof of a legitimately timely claim. Depression and how he felt, those were things that had nothing to do with proving the motive of the person who made the racial, the racist statements, or more important, the racial conduct that was critical to the case, removing the stops and the pay differences. These were questions for a jury to get to motive. Can I ask a couple of very minor factual questions, one of them being almost silly, but what on earth does homie mean in that context? In this case, it's an important word, and Mr. Gould didn't help me a whole lot. This was, as I think the lower court correctly said in a prior order, it was a dog whistle, a racist dog whistle. It was using language, and as Mr. Barker also said in the pleading, and I'm paraphrasing, it was like black exploitation. White culture is not using the word homie in the way black culture uses the word homie,  That is, I think, what we're talking about here. But it was more, there were other things that were, of course, much more, as the lower court said in their own words, abhorrent, calling him a monkey, or saying that he had to wait in line or be in a certain place in line because we treat our own differently, I'm paraphrasing, not quoting it. Those statements, and the court analyzed those, by the way, on their own, on their own, distinctly in its first analysis. In its second analysis, it then went to the conduct, which is actually the really important part because the conduct is, you don't really get from the opinion of the lower court where the statements end and where the conduct begins. That's kind of one of the problems of reading and interpreting it, but no matter how you look at it, it doesn't say we're excluding the conduct because it's not admissible. It's saying it's too admissible, it's too related to discrimination. It's too much about racial discrimination. Because the court's saying that the conduct is too discriminatory and therefore relates to racial discrimination, we can't have it to prove constructive discharge, means that any case, and in violation of the Supreme Court's ruling that was very clear on the facts and the law, in violation of Morgan, Amtrak v. Morgan, it said that because it's too discriminatory and too racially charged, we can't have it in there. It goes to the heart of racial discrimination, which conflates a claim from evidence that's permitted to prove a timely claim. The reason Morgan was released as an opinion, Morgan had the same issue. They said he was on the evidence, I'm sorry. Can I ask one other actual question? Was there any other person at or around the time that he had stops removed from his service of it? Was there anyone else at about that time who had stops removed? Was there another black person who was similarly affected? From the record, it's not clear. I can't, you know, it would be, it's not clear from the record. The case is about, ultimately, what would likely be two trial witnesses, Mr. Nunez, who would support the racist statements, more than just the statements that were flat out, but the statements of Gambardella, who was a supervisor who was in charge, and the conduct of that individual who was allowed to, permitted to engage in that conduct for quite a while. But I don't recall from the record other members of the class or anything, Your Honor. All right. Will you reserve three minutes for rebuttal, Mr. Rosenberg? We'll now hear from Ms. Rodriguez. Thank you. And Ms. Rodriguez, just make sure you're close to those mics because when we do this with a Zoom, it always makes the mics even more crucial than usual. Is this good enough? I think get between them, and that is the best way to do it. It looks like they're at the right level. Okay. And Mr. Rosenberg will let us know if he can't hear. Okay. Thank you. Good morning, and may it please the Court. My name is Melissa Rodriguez. I'm counsel for Appley Aramark Uniform and Careel Apparel, LLC. I will refer to it as Aramark. This Court should affirm the district court's entry of summary judgment against appellants Title VII constructive discharge claim for punitive damages, unless the appellant can convince the Court of at least two independent propositions. First, the appellant will demonstrate that the impact of three vague comments over the course of three and a half years of employment, alongside with a de minimis reduction on pay of approximately 11 percent, created such intolerable workplace conditions that any reasonable person would feel compelled to resign, even though after those things happened he stayed with the company for several months. This Court's precedent makes clear that such conduct does not rise to the lesser hostile work environment standard, let alone the heightened and more demanding standard for a constructive discharge claim. Second, the appellant will demonstrate that the work conditions that he's complaining about were created deliberately on the basis of his race to force him, to drive him to resign. He does not do so. Instead, complaining that the district court only relied on time-barred incidents as background evidence, as it correctly did, rather than resurrecting properly dismissed time-barred claims under Amtrak v. Morgan. And he does so without ever addressing the district court's analysis in the alternative, doing exactly what he's asking this Court to do now. Because the appellant cannot clear either hurdle, let alone both of them, this Court should affirm the dismissal of his constructive discharge claims. Finally, even if the appellant could somehow meet the demanded standard for constructive discharge, he certainly cannot meet the even higher bar to recover punitive damages, which is an independent basis to affirm the district court's entry of summary judgment. Constructive discharge requires, again, intent of the employer to cause, on the basis of appellant's race, intolerable work conditions that would compel a reasonable person to resign. And lacking either, the claim must dismiss as a matter of law. First, the district court correctly found that the conditions are not intolerable as a matter of law. The law requires that a reasonable person would feel compelled, forced to resign in the face of the allegations that Mr. Barker is making, and he identifies three incidents in support of that claim. First, the stress that he felt as a result of the pay reduction that was due to the time-barred reassignment of stops. That reassignment of stops, again, is time-barred and can only be used as background evidence, which is exactly what the Court did here. That reduction was only of approximately $5,000 over the same period of time, year prior and year after. This decline in pay is insufficient as a matter of law to create and to meet the demanding standard for constructive discharge. It's important to note that Mr. Barker stayed in the job many months after the reassignment of the stops and the subsequent pay reduction while he was searching for another job, which is another reason to find under this Court's precedent that the conditions were not intolerable as a matter of law. Second, Mr. Barker relies on the monkey comment that we have discussed. This is not a comment that the appellant heard himself. This is a comment that he heard through somebody else. And the Court correctly found that when the appellant is not the recipient of the comments, the comments are not persuasive in establishing a hostile work environment, again, let alone the more demanding standard for constructive discharge. The two additional comments upon which Mr. Barker relies are the comments of Homey, and we look after our own. No credibility determinations were made in connection with those comments, contrary to what Mr. Barker seems to be arguing. To the contrary, what the Court found is that even drawing all the inferences in favor of appellants, in favor of the appellant, that was still not enough under this Court's precedent to sustain a claim for evil and hostile work environment, and again, let alone for the more demanding standard for constructive discharge. Secondly, a constructive discharge claim requires evidence of racial intent to deliberately drive the appellant to resign. And the appellant really offers none here beyond what we have already described. The District Court did not misapply Morgan to exclude evidence of racial intent for any purpose of the constructive discharge claim. The Court, as you all noted, correctly used that evidence as background evidence to explain the stress from the loss of pay. But the reassignment of the stubs itself, what caused the reduction in the pay, is a discrete event that is time-barred under Morgan and cannot be resurrected simply because no claimant decided to bring a constructive discharge claim thereafter. Regardless, it's important to note that the District Court, that this Court could also affirm, because the District Court did address that evidence of reassignment motives in the alternatives. It is in footnote 11 of the Court's decision, which the appellant does not mention in his papers or in argument today. And in that footnote, the District Court says that the post-reassignment pay was within their acceptable range under the collective bargaining agreement, which undercuts any argument that the reassignment was intended to make conditions intolerable on the basis of race. Finally, there's no separate cause of action for punitive damages under this Court's precedent and certainly not enough evidence to show conscious disregard of Federal law or outrageous conduct that would show or from which malice could be inferred or reckless disregard for Federal rights. It is important to note that employers cannot be vicariously liable for punitive damages for managerial decisions based by local managers when the employer itself makes good-faith efforts to comply with Title VII, and there is a plethora of evidence of those efforts here. In sum, unless Your Honors have any questions, I ask that this Court affirm the District Court's grant of summary judgment to Aramark on Appellee's constructive discharge claim and request for punitive damages. Thank you very much, Ms. Rodriguez. Thank you. We'll now hear from Mr. Rosenberg for three minutes of rebuttal. Your Honors, opposing counsel just argued the case to the jury as a fact case that Mr. Barker will not get if they get the ruling they want on appeal. Every insufficiency argument opposing counsel makes is built on the District Court's error. It's a circular. The Court blocked the motive evidence, then found what remained insufficient. You cannot strip racial motive from the analysis and then say what remains doesn't show racial motive. Opposing counsel says three comments. The District Court credited two. Opposing counsel says the monkey comment is hearsay. The District Court found it admissible at Special Appendix 11 and 12, and it also said there would presumably be a witness to testify to that comment. Opposing counsel is relitigating a ruling they lost below on that very issue. Opposing counsel says Mr. Barker wasn't the recipient of the monkey comment. We offer it to prove Gamardella's intent, not Mr. Barker's experience. And if I recall, the case I think was Leibovitz doesn't bar evidence of what the decision-maker was thinking in their head. Opposing counsel says 11 percent and $5,000 they throw to the Court here. The District Court never evaluated that pay cut in the context of racial motive or the whole context because it ruled that motive evidence couldn't be used. Whether a racially motivated pay cut is intolerable is a jury question that was never asked. Opposing counsel says Mr. Barker stayed for months. He stated he was exhausting internal remedies. A grievance sabotaged by a white employee received it at his stops. That was the person in charge of grievances and who buried his grievance. Opposing counsel cites footnote 11, and this is very helpful. Footnote 11, which I did not address in my brief, but now that opposing counsel brought it up, used a standard called likely would be insufficient. Likely is not the Rule 56 standard for summary judgment, and it was written after the Court blocked the motive evidence. It is a product of the error, not independent of it. And finally, the District Court told Mr. Barker he could sue for being forced out ultimately but could not tell the jury why. That was what the case said. The District Court told him that you can't tell them why you were pushed out. That's time-barred evidence in violation of Morgan. Morgan says the background evidence comes in in proof of the standing claim that is not time-barred. And if the Court rules for opposing counsel, it therefore cuts off the words that in support of the claim that is not time-barred ultimately, as I paraphrased. We therefore respectfully ask this Court to reverse and remand for appropriate proceedings moving forward. Thank you, Your Honors, for your time. All right. Thank you, Mr. Rosenberg. I'm glad this worked out, and Ms. Rodriguez, thank you as well. We will reserve decision.